**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SAMUEL SLEDGE, | ) |
| Petitioner, | ) Case No. 15-cv-7295 |
| v. | ) Judge Sharon Johnson Coleman |
| KIM BUTLER, | ) |
| Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

Petitioner, Samuel Sledge, filed a writ of habeas corpus alleging that he was deprived of his constitutional rights at multiple points during the course of his trial and subsequent appeal. For the reasons set forth below, this Court denies Sledge's petition for habeas corpus relief.

**Background**

Because Sledge does not present clear and convincing evidence challenging the statement of facts set forth in the Illinois Appellate Court's opinion, those facts are presumed to be correct for the purpose of habeas review. *See* 28 U.S.C. § 2254(e)(1); *Rever v. Acevedo*, 590 F.3d 533, 537 (7th Cir. 2010). This Court therefore adopts those facts as set forth below.

Prior to trial, Sledge filed a written motion to quash his arrest and suppress evidence, arguing that his arrest was made without the authority of a valid search or arrest warrant or probable cause. At the suppression hearing, however, Sledge sought only the suppression of his cell phone, which had been seized from inside his house without a search warrant.

At the suppression hearing, Chicago Police Officer Michael Chatham testified that, on the afternoon of August 19, 2010, he had received a radio message that a sexual assault had occurred near his location in a garage containing a barber's chair, and that the offender was a short-haired African-American man in a white tank top and blue denim shorts with a "square cut design style."

1

Officer Chatham and his partner, Officer James Berlage, asked a passerby whether anyone in the area cut hair out of his garage and were directed to Sledge's yard. Sledge, who was in his yard, fit the suspect's description. Officer Chatham and his partner asked Sledge whether he cut hair, and Sledge answered that he did. The officers entered Sledge's yard and asked Sledge if he would open his garage door. Sledge agreed and opened the door, revealing a barber chair. The officers then arrested Sledge.

Detective Susan Ruck testified that she had been assigned to investigate the criminal sexual assault and had already met with the victim when she arrived at Sledge's house at 4:30 PM. Upon her arrival, she told the officers at the house that the victim had reported that her assailant had recorded the assault on his cellphone. One of the officers entered the house without consent, seized Sledge's phone, and gave it to Detective Ruck. At around 6:00 PM that evening, Sledge gave Detective Ruck permission to search his cell phone as long as she only viewed the video taken on August 19th.

The trial court suppressed the contents of Sledge's phone because the officer's warrantless entry into Sledge's home to retrieve the phone violated the Fourth Amendment. The Court reserved its ruling on whether the prosecution could admit interrogation responses obtained after the police had viewed the cellphone video or whether Sledge could be impeached with the contents of the phone.

At trial, the victim testified that she had met Sledge a couple of months prior to the assault but that she had since forgotten his name. On August 19, 2010, at around 9:30 AM, she encountered Sledge in his truck. She talked to Sledge for a few minutes before getting into his truck and riding to his house. They went into the basement, where Sledge put on some music and discussed how he was "selling pills." He also asked the victim whether she wanted "him to give [her] head" and she declined. They went out the back door and into the garage. Sledge began

pacing and picked up a pole, which the victim described as a "car jack." She testified that Sledge came toward her "in full rage" and accused her of stealing seventy-five dollars from him the last time she was at his house. He checked her pockets, which were empty. Sledge then ordered her to take off her clothes and repeatedly sexually assaulted her on a barber chair in the garage.

After he ejaculated, Sledge made the victim get dressed and told her to leave. She left the garage, went around the corner, and told a street vendor that she had just been raped. She used the vendor's phone to call the police, and then took a bus home. When she got home, she told her mother that she had been raped but that she had forgotten the rapist's name, and her mother called the police. The police took the victim to the hospital.

On cross-examination, the victim clarified that she had not been coerced into the garage, and denied having told her mother that Sledge had used a tire iron to drag her into the garage or having told the police that she was dragged into the garage by an unknown man.

Terry Myrick testified that on the afternoon of August 19th, 2010, he was selling snow cones at a corner near Sledge's house when a "young lady came up to [him] crying saying she wanted to use [his] phone." She told him that she had been raped and used his phone to call the police. She then walked away, saying that she was going to see her mother.

Officer James Berlage testified that at approximately 3:00 PM on August 19, 2010, he and his partner Officer Chatham received a radio message that a black man in blue colored shorts with a "box design" on the back of them had committed a sexual assault on a barber's chair in a nearby garage. They asked passersby if they knew anyone who cut hair out of his garage and were directed to Sledge's home. There, the officers found Sledge standing next to his garage in a pair of blue shorts with a box design on them. They talked to him from the alley next to the garage. They asked him if he cut hair and if he had a barber chair in his garage, and he answered affirmatively. They then asked if they could enter his yard. Sledge did not have the key to the gate on him, so they

3

hopped over the fence. They then asked Sledge if they could look inside the garage. Sledge opened the garage door, revealing a barber chair inside, and the officers immediately placed Sledge in custody.

Assistant State's Attorney Fournier testified that she interviewed Sledge at 12:10 AM on August 20, 2010. Sledge indicated that he wished to speak to her, but refused to memorialize his statements in writing. He told her that he knew the victim from seeing her on the street a couple of times in the past. While driving on August 19, 2010, he saw her and asked her to come over to his basement, where they hung out, listened to music, and smoked cigarettes. They then went to the garage, where they had had sex previously. Sledge then began talking to the victim about seventy-five dollars that she owed him. He then "made" the victim "spread open her legs" and demanded that she "perform several sex acts." Sledge admitted that he "had threatened to smack" the victim and may have threatened to hurt her with a metal pole. He stated that he "had taken ecstasy a few hours prior, and that had made him crazy, and he just lost it." During this interview, Sledge repeatedly mentioned the money that the victim owed him and stated that he had felt that the victim should have sex with him because she owed him money.

Juan Davis, Sledge's former cellmate who had been involved in several fights with Sledge, testified that Sledge "bragged" about what he did to the victim. Reportedly, Sledge told Davis that the victim had stolen his pills and money and that he had threatened her with a jack before having oral and vaginal intercourse with her on the barber chair.

The parties also stipulated that an expert in forensic DNA analysis would have testified with a reasonable degree of scientific certainty that the male DNA profile obtained from the victim's vaginal swabs matched Sledge's DNA profile.

Sledge also testified on his own behalf. According to Sledge, on August 19, 2010 he was driving a truck when he saw the victim "walking around the part of Madison where you can pick up

4

a prostitute." Sledge pulled over and asked the victim if she wanted to make some money. She agreed and got in the car. Sledge took her to his house, where they drank and smoked marijuana in the basement before going to the garage to have consensual sex. Sledge claimed that he had previously had sex with the victim twice and that, in each instance, he had paid her fifty dollars. On August 19, however, Sledge only paid the victim fifteen dollars because she had stolen some money from him the last time he saw her. The victim got extremely upset and told him that if he did not pay her the money she would call the police and accuse him of rape. Sledge denied having told ASA Fournier that he had forced the victim to spread her legs, threatened her, or been on ecstasy, and denied having told detectives that he had threatened the victim or forced her to perform sex acts. Sledge also addressed Davis's testimony, reporting that he got into a fight with Davis because Davis was reading his mail and personal effects, as demonstrated by Davis's knowledge of the details of Sledge's case.

The parties also stipulated that the victim's medical records indicated that she had told medical personnel that she was walking home from a friend's house when she was grabbed by an assailant wielding a pipe, led to a nearby garage, and sexually assaulted.

Following a bench trial, Sledge was convicted of three counts of aggravated criminal sexual assault and sentenced to forty-eight years in prison. Sledge appealed his conviction arguing, as is pertinent here, that (1) trial counsel was ineffective for failing to argue for the suppression of inculpatory statements made to ASA Fournier and Detective Ruck on the ground that they were the fruit of the unconstitutional search of his cell phone; (2) the evidence obtained from petitioner's garage should have been suppressed because the police entered his back yard in violation of the Fourth Amendment, and (3) the trial court erred by limiting cross-examination regarding the victim's prior inconsistent statements. (Dkt. 24-1). The Appellate Court affirmed, concluding that Sledge had not established that trial counsel was ineffective, that he had forfeited his claim regarding the

evidence obtained from his garage by waiving that issue at the motions hearing, and that the trial court did not abuse its discretion in limiting Sledge's cross-examination of the victim regarding prior inconsistent statements because defense counsel's offer of proof did not fit the contents of the prior statements. (*Id.*). Sledge subsequently filed a petition for leave to appeal to the Illinois Supreme Court, arguing that trial counsel was ineffective for failing to argue for the suppression of petitioner's inculpatory statements and that the evidence from the garage should have been suppressed because the police entered petitioner's backyard in violation of the Fourth Amendment. (Dkt. 24-2). The state supreme court denied the petition. Sledge subsequently filed a petition for writ of certiorari with the United States Supreme Court, which was denied. *Sledge v. Illinois,* 135 S.Ct. 1747, 191 L.Ed.2d 712 (2015), *reh'g denied* 135 S.Ct. 2397, 192 L.Ed.2d 181 (2015).

Sledge also filed a joint postconviction petition and petition for relief from judgment arguing, as is pertinent here, that (1) the evidence was insufficient to support his conviction; (2) the police violated the Fourth Amendment when they entered his yard; (3) all of his post-arrest statements should have been suppressed; and (4) the indictment failed to provide adequate notice of the charges. (Dkt. 24-7). The trial court dismissed the postconviction petitions. (*Id.*). Petitioner subsequently appealed, withdrew his appeal, filed motions in the trial court objecting to its dismissal of the petition, and, when those motions were denied, again appealed the denial of his postconviction petitions before, again, withdrawing his appeal. (Dkts. 24-3, 24-7). Sledge then filed the present pro se habeas corpus petition. After the answer brief was entered and prior to entering his own reply, Sledge additionally filed a motion for summary judgment.

**Legal Standard**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides for habeas corpus relief when, as a result of a state court decision, a criminal defendant is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The statute exists to

6

ensure the fundamental fairness of states' criminal adjudications. *Williams v. Taylor*, 529 U.S. 362, 375, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Before a district court can address a habeas petition on its merits, a petitioner must have both exhausted his state remedies and avoided any fatal procedural defaults. *See* 28 U.S.C. § 2254(b). In Illinois, exhaustion requires that the petitioner present each claim in his or her habeas petition to the Illinois Appellate Court and, if the Illinois Appellate Court affirms the trial court's ruling, to the Illinois Supreme Court in a petition for discretionary review. *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)).

To obtain relief under section 2254, it is not enough to demonstrate that a state court's decision was erroneous. *Badelle v. Correll*, 452 F.3d 648, 655 (7th Cir. 2006). Rather, a writ may only be granted if the state court, in adjudicating the claim on the merits, unreasonably applied clearly established federal law as determined by the Supreme Court of the United States. § 2254(d)(1). Accordingly, to obtain a writ of habeas corpus, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. *Harrington v. Richter*, 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

**Discussion**

As an initial matter, this Court addresses the purported motion for summary judgment that Sledge filed with his reply brief. Sledge initially filed a document entitled "Motion for Summary Judgment" on February 9, 2016, notifying this Court that he would subsequently be moving for summary judgment. On February 22, Sledge submitted his reply to the government's answer and included, in the body of the reply, his motion for summary judgment. That motion was not properly noticed or filed in accordance with this Court's local rules and standing orders, and accordingly was subject to being stricken. Moreover, because no controverted evidence has been

7

presented in this matter, summary judgment can afford no relief that is not already encompassed within Sledge's petition for Habeas Corpus. *Cf. Gilyard v. Sternes*, No. 01 C 6550, 2004 WL 719261, at *2 (N.D. Ill. March 31, 2004) (Coar, J.) (recognizing that summary judgment motions in habeas cases "do not narrow and isolate factual issues for trial as they do in other civil cases" and that their filing is therefore "not required or encouraged"). Sledge's purported motion for summary judgment, however, both responds to arguments from the respondent's Answer and further advocates for the grant of habeas relief. Accordingly, rather than striking this motion, the substance of which was filed as part of Sledge's reply, this Court will treat it as a continuation of that reply and will consider its arguments in ruling on his claims for habeas relief. *United States ex rel. Brookhouse v. Ahitow*, No. 97 C 642, 1997 WL 445936, at *2 fn. 2 (N.D. Ill. Aug. 1, 1997) (Marovich, J.).

This Court construes pro se allegations liberally. *See McGee v. Bartow*, 593 F.3d 556, 565–66 (7th Cir. 2010). Construed liberally, Sledge's petition claims that (1) trial counsel was ineffective for failing to move to suppress inculpatory evidence, (2) appellate counsel was ineffective; (3) the evidence was insufficient to support his conviction; (4) the evidence obtained from Sledge's garage should have been suppressed because the police entered his backyard in violation of the Fourth Amendment; (5) the prosecution failed to disclose DNA evidence and a police report containing an inconsistent statement by the victim; and (6) the indictment failed to provide adequate notice of the charges.

*Petitioner's Unexhausted Claims*

To preserve a claim for federal habeas review, a state prisoner must, among other things, assert his federal claim through one complete round of state court review, either on direct appeal of his conviction or in post-conviction proceedings. *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). In Illinois, this means that the petitioner must have both appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court. *Smith v.*

8

*McKee*, 598 F.3d, 374, 382 (7th Cir. 2010). This Court cannot consider habeas claims that have not been preserved in the state court. *Id.*

Here, Sledge did not raise his present arguments that appellate counsel was ineffective, that the prosecution withheld evidence, or that the indictment did not provide adequate notice of the charges in either his direct appeal from his conviction or in his post-conviction petitions. Moreover, although Sledge did assert that there was insufficient evidence to sustain his conviction in his post-conviction petitions, he failed to exhaust "one complete round of state court review" because he dismissed his appeals of the trial court's orders denying those petitions, thus depriving the Appellate Court and the Supreme Court of the opportunity to consider that claim. Accordingly, the foregoing claims are procedurally defaulted.

Defaulted habeas corpus claims may be reviewed only upon a showing (1) of cause for the default and actual prejudice as a result of the alleged violation of federal law or (2) that the failure to consider the claim will result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1(2006). Here, Sledge has established neither cause and prejudice for his procedural defaults nor that a fundamental miscarriage of justice has occurred. Accordingly, this Court cannot consider the claims that have been procedurally defaulted by Sledge's failure to exhaust his state court remedies. *Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008).

*Petitioner's Claim to Suppress the Evidence from his Garage*

In his direct appeal, Sledge argued that the police violated the Fourth Amendment when they hopped over his backyard fence, and that the resulting evidence that they recovered from his garage therefore should have been suppressed. The Appellate Court held, in pertinent part, that that claim had been forfeited because Sledge had not raised it before trial[1] or in a post-trial motion.

---

[1] As the appellate court noted, Petitioner actually had raised this issue in his written motion for the suppression of evidence, but abandoned that argument at the suppression hearing. Petitioner does not challenge the appellate court's conclusion that this constituted a waiver of this claim.

9

Sledge subsequently filed a petition for leave to appeal with the Illinois Supreme Court, thus exhausting his state law remedies.

Because habeas relief is intended to resolve errors of constitutional dimension, it cannot be granted where a petitioner's federal claim was resolved on a state law ground independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), *superseded by statute on other grounds*, 28 U.S.C. § 2254(b)(2). Here, the Appellate Court's determination that Sledge's claim was forfeited is independent of federal law, because it relies wholly upon state procedural rules and does not depend upon a federal constitutional ruling on the merits. *See, e.g., Szabo v. Walls*, 313 F.3d 392, 395–96 (7th Cir. 2002) (holding that a state court's forfeiture decision was independent of federal law). The Appellate Court's determination is also adequate to block federal review, because it is well established that criminal defendants must raise claims of trial error in a post-trial motion in order to preserve them for appeal. *Smith v. McKee*, 598 F.3d 374, 386 (7th Cir. 2010). Accordingly, and because Sledge has not established a ground for this Court to review his defaulted claims, this Court cannot grant habeas corpus based on Sledge's Fourth Amendment argument.

*Ineffective Assistance of Counsel*

Sledge's claim of constitutionally ineffective assistance of trial counsel is also properly brought, because he successfully exhausted his claim by raising it both in his appeal of his conviction to the Illinois appellate court and in his petition for leave to appeal before the supreme court.

Where a state court has addressed a petitioner's claim on the merits, a federal court must first determine whether, on the record before the state court, that court's decision was contrary to, or an unreasonable application of, United States Supreme Court precedent. *Cullen v. Pinholster*, 563 U.S. 170, 185, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011). Only after a state court's decision has been found to be contrary to or an unreasonable application of Supreme Court precedent may a district

court assess the underlying claim on its merits and determine the appropriateness of habeas relief. *Mosley v. Atchison*, 689 F.3d 838, 853 (7th Cir. 2012).

To show constitutionally ineffective assistance of counsel, a petitioner must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness; and (2) that but for counsel's errors or omissions, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Here, Sledge argued on appeal that his trial counsel was constitutionally ineffective by failing to attempt to suppress Sledge's statements to ASA Fournier and Detective Ruck which, allegedly, were the fruits of the unconstitutional search of his cellphone. The Appellate Court, applying *Strickland*, denied that claim, finding that Sledge had failed to show that counsel had performed deficiently or that, but for that deficient performance, there was a reasonable likelihood of acquittal. Sledge must therefore show that the Appellate Court's decision denying his *Strickland* claim was contrary to, or an unreasonable application of, Supreme Court precedent.

As an initial matter, Sledge cannot establish that the appellate court's holding that trial counsel acted in an objectively reasonable manner by not objecting to Detective Ruck's testimony was contrary to, or an unreasonable application of, Supreme Court precedent. It is well established that illegally obtained evidence, although inadmissible as substantive evidence, is permissibly used as rebuttal evidence to impeach the testimony of the defendant. *James v. Illinois*, 493 U.S. 307, 312, 110 S.Ct. 648, 107 L.Ed.2d 676 (1990). Because Detective Ruck's testimony was offered in rebuttal to Sledge's own testimony, it was therefore subject to that exception in the exclusionary rule and was admissible. Counsel therefore did not act in an objectively unreasonable manner by failing to object to the admission of that evidence. *See Benefiel v. Davis*, 357 F.3d 655, 664 (7th Cir. 2004) (recognizing that counsel cannot be faulted for failing to make futile objections). Accordingly, Sledge has not

11

established that the appellate court's holding with respect to Detective Ruck's testimony was contrary to existing precedent.

Further, Sledge fails to establish that the appellate court's holding that Sledge was not prejudiced by Detective Ruck and ASA Fournier's testimony was contrary to, or an unreasonable application of, existing Supreme Court precedent. In evaluating prejudice courts look at all of the evidence presented at trial, so that an attorney's errors are more likely to be prejudicial when a verdict is based on weak evidence than when there is overwhelming support for the verdict in the record. *Magee v. United* States, 277 F. App'x 598, 602–603 (7th Cir. 2008). Even without Detective Ruck and ASA Fournier's testimony, there was substantial evidence supporting Sledge's conviction. Uncontroverted DNA evidence established that Sledge had engaged in intercourse with the victim. Although Sledge disputes the victim's credibility, her testimony that that intercourse was non-consensual was corroborated by numerous other witnesses and, tellingly, was not controverted even by the purportedly impeaching statements that Sledge introduced into evidence. In light of the strength of this corroborating evidence, Sledge has not established that the appellate court's determination that he was not prejudiced is contrary to, or an unreasonable application of, existing precedent. Accordingly, his claim for habeas corpus relief based on the alleged ineffective assistance of trial counsel must be denied.

*Certificate of Appealability*

When a court dismisses a habeas petition, it must issue or deny a certificate of appealability. In order for a certificate of appealability to issue, the applicant must have made a substantial showing of the denial of a constitutional right, such that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Similarly, when a habeas petition is dismissed on procedural grounds, the

petitioner must additionally show that a reasonable jurist would find it debatable whether the district court was correct in its procedural ruling. *Id.*

For the reasons stated in this order, this Court finds that Sledge has not made a substantial showing of the denial of a constitutional right as he has not demonstrated that a reasonable jurist could debate either the trial court's procedural rulings or whether the petition states a valid claim of the denial of a constitutional right. Accordingly, this Court declines to issue a certificate of appealability.

**Conclusion**

For the foregoing reasons, Sledge's petition for habeas corpus relief [1] is denied and a certificate of appealability does not issue.

IT IS SO ORDERED.

Date: March 28, 2016

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge